IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARA AMONE INDIVIDUALLY, AND ON BEHALF OF ALL PERSONS SIMILARLY SITUATED,<br><br>  Plaintiffs,<br><br>  vs.<br><br>STEPHANIE AVEIRO, IN HER OFFICIAL CAPACITY AS THE EXECUTIVE DIRECTOR OF THE HOUSING AND COMMUNITY DEVELOPMENT CORPORATION OF HAWAII, ET AL.,<br><br>  Defendants. | Civ. No. 04-00508 ACK-BMK |

**ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT**

**BACKGROUND**

On August 18, 2004, Plaintiff Mara Amone filed her Complaint against Defendants Stephanie Aveiro, in her official capacity as the Director of the Housing and Community Development Corporation of Hawaii ("HCDCH"), and HCDCH. Plaintiff's Complaint alleged that Defendants failed to comply with the requirements of the United States Housing Act § 1437a(1) and the United States Department of Housing and Urban Development's ("HUD") supporting regulation (24 C.F.R. § 965.508) by (1) failing to provide notice to tenants of public housing informing

1

them that if they were disabled and required increased utility usage as a result of their disability, they may be entitled to an increase in their utilities allowance; and (2) failing to establish and implement rules and procedures to determine what the increased allowance would be.  Plaintiff alleged that by failing to provide her with the benefits afforded to non-disabled residents, Defendants violated her rights under Section 504 of the Rehabilitation Act (29 U.S.C. § 794(a)), the Americans with Disabilities Act (42 U.S.C. § 12132), the Fair Housing Act (42 U.S.C. § 3604(f)(2)), and 42 U.S.C. § 1983.  Plaintiff alleged that she is representative of a class of similarly situated present and past disabled federal public housing.

On March 2, 2005, the Court issued an Order certifying and defining the class in this action as: "disabled persons that currently reside, or have resided within the last two years, in an HCDCH public housing project in which residents receive utility allowances, whose special needs arising from their disability require them to consume utilities in excess of the amount provided for in the standard utility allowances."

On May 31, 2005, the Court granted Plaintiffs' motion for partial summary judgment as to Counts II, IV, V, and VI of the Complaint and found that liability was established under Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, the Fair Housing Act, and through section 1983

for violations of the United States Housing Act.  The Court found that Defendants had failed to provide adjustments to the utility allowances of disabled public housing residents whose special needs arising from their disabilities require them to consume utilities in excess of the amount provided for in the standard public housing utility allowances. The Court further found that there was a threat of continuing violations because appropriate regulations had not yet been adopted and Defendants had not provided sufficient proof that allowances were being provided when appropriate or that new residents were being informed of the availability of utility allowances.

On June 17, 2005, the Court entered a permanent injunction in favor of Plaintiffs ordering Defendants to comply with 24 C.F.R. § 965.508 by (1) adopting criteria and procedures for providing adjustments to the utility allowances of disabled public housing residents; (2) providing notice to current and incoming tenants of public housing that they may be entitled to a utility allowance adjustment, based on disability, and the criteria and procedures for obtaining such adjustments; and (3) providing adjustments to the utility allowances of disabled public housing residents.  The Court also approved of the Notice informing all current and former residents known to be disabled of the availability of and process for applying for supplemental

utility allowances.  See Exh. "1," Miyamoto Decl. at ¶ 11.[1]

Following the June 17, 2005 Order, the HCDCH has taken the following corrective actions.  On November 8, 2005, 1,625 Notices were mailed via certified mail to all disabled residents of record residing in public housing between August 18, 2002 and the present. Return receipt was requested and 302 were returned as unclaimed and 6 were marked "Deceased." Id. at ¶ 13.  HCDCH also published the Notice in the following newspapers: The Garden Island, West Hawaii Today, Hawaii Tribune Herald, Midweek, the Honolulu Star Bulletin, and The Maui News. Id. at ¶ 14; Exhs. "3" through "7."

On March 10, 2006, HCDHCH amended its Reasonable Accommodation form to include a specific category for eligible disabled public housing residents to request the supplemental utility allowance. See Miyamoto Decl. at ¶. 15; Exh. "8." HCDCH conducted its annual review of the utility allowance schedules for 2006 and has implemented the required adjustments. See Exh. "9."  HCDCH interim executive director, Patti Miyamoto, stated that HCDCH will begin conducting the 2007 annual review and update of utility allowances and, if required, implement necessary amendments by July 1, 2007.  See Miyamoto Decl. at ¶

---

[1] The Parties state in the Joint Motion that Defendant Stephanie Aveiro retired as the HCDCH executive director in September of 2006.  Patti Y. Miyamoto, who was HCDCH's chief compliance officer, is the interim executive director. See Joint Motion at 7 n.2.

17.

The Parties state that the Defendants have complied with the Court's Order and corrective measures have been instituted by HCDCH, including updating the supplemental utility allowances and amending the administrative rules to require annual updating and review of the utility allowance schedules. See Joint Motion at p. 8. The Parties engaged in settlement discussions and reached a Settlement Agreement. See Exh. "A". The Agreement awards Class Counsel their attorneys' fees and costs in the amount of $40,139.59 in full settlement of all claims asserted in this lawsuit as well as future claims or demands related to this lawsuit. The Agreement provides that upon execution of the Agreement, the Parties shall file all appropriate pleadings to dismiss the case with prejudice and dissolve the injunction. See Exh. "A" at p. 9.

On February 22, 2007, the Parties filed a Joint Motion for Preliminary Settlement Approval with this Court. The Parties attached as Exhibit "1" to the Joint Motion, "Important Notice to Class members in 'Amone, et al. v. Aveiro, HCDCH,' Civ. No. 04-00508 of Proposed Settlement and Order." The Parties request that the Court:

    (1) Grant preliminary approval of the settlement reached in this case;

    (2) Set a date and time for the Final Fairness Hearing,

which may be waived by the Court if no objections to the settlement are received within the time specified;

(3) Approve the publication of the proposed Notice to class members of the Proposed Settlement or an alternative Notice; and

(4) If no written objections to the settlement are received from any class members ten (10) days before the Final Fairness Hearing date, then the Court may waive the Hearing and enter an Order giving final approval to the settlement, and enter an Order dismissing the case with prejudice.

The hearing on the Joint Motion was held on Monday, May 21, 2007 at 9:30 a.m..

### STANDARD

### Approval of a Settlement in a Class Action under Rule 23(e)(1)

Federal Rule of Civil Procedure 23(e)(1) provides:

(1)(A) The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class.
(B) The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.
(C) The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

Some courts have suggested a three-step process for final approval of a settlement in a class action: (1) the court makes a preliminary approval of the proposed settlement; (2) the court

directs notice of the proposed settlement to all class members who would be bound by the settlement; and (3) the court holds a hearing for final approval and may approve the settlement upon a finding that it is fair, reasonable, and adequate. See, e.g., Williams v. Vukovich, 720 F.2d 909, 921 (6th Cir. 1983); Brotherton v. Cleveland, 141 F. Supp. 2d 894, 903 (S.D. Ohio 2001). The Ninth Circuit has provided guidance for determining whether a settlement is fair, reasonable, and adequate,

> Assessing a settlement proposal requires a district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; ... and the reaction of the class members to the proposed settlement. The district court must show that it has explored these factors comprehensively to survive appellate review. In addition, the settlement may not be the product of collusion among the negotiating parties.

In re Mego Financial Corp. Securities Litigation, 213 F.3d 454, 458 (9th Cir. 2000)(internal citations omitted).

## **DISCUSSION**

For the following reasons, the Court finds that the proposed Settlement is fair, reasonable, and adequate.[2]

---

[2] Because the settlement evaluation factors are non-exclusive, discussion of those factors not relevant to this case may be omitted. See Churchill Village, L.L.C. v. General Electric, 361 F.3d 566, 576 n.7 (9th Cir. 2004) (citing Torrisi v. Tucson Electric Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993)).

      A.    <u>The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation</u>

Plaintiffs' case is very strong. The Court entered Summary Judgment in favor of Plaintiffs on Counts II, IV, V, and VI of the Complaint and entered a permanent injunction in favor of Plaintiffs ordering Defendants to take certain corrective action to comply with the law. Defendants have abided by the prescribed corrective actions to the satisfaction of the Plaintiffs and this Court. Thus, the risk, expense, and likely duration of further litigation is minimal. These factors weigh in favor of approving the settlement agreement.

      B.    <u>The Amount Offered in Settlement</u>

The amount offered in settlement is $40,139.59 for Plaintiffs' attorneys' fees and costs. Plaintiffs did not seek compensatory damages in the Complaint. The only relief sought was a Court Order that Defendants comply with the law. The Plaintiffs obtained the relief they sought, and both sides have agreed to the amount of attorneys' fees claimed by the Plaintiffs. The Plaintiffs did not submit to the Court affidavits or other documentation supporting the amount of fees and costs alleged. Nevertheless, the Court expresses deference to the private consensual decision of the Parties. <u>See</u> <u>Officers for Justice v. Civil Service Commission of San Francisco</u>, 688 F.2d 615, 628 (9th Cir. 1982). Like the court in <u>Hanlon v.</u>

Chrysler Corp., 150 F.3d 1011, 1027 (9th Cir. 1998), the Court notes that there is no evidence to suggest that the settlement was negotiated in the absence of information supporting the value of Plaintiffs' claims, here, for the amount of attorneys' fees and costs. The Court directs Class Counsel to submit an affidavit supporting the amount of attorneys' fees and costs alleged in the Settlement Agreement. Subject to the receipt of the affidavit substantiating Class Counsel's attorneys' fees and costs, the Court finds the amount of the Settlement reasonable and adequate in light of the nature, progress, and outcome of this litigation.

      C.    The Extent of Discovery Completed and the Stage of the Proceedings

The instant litigation commenced nearly three years ago and has almost reached its conclusion. The Parties have conducted discovery and have litigated the merits of the claims for summary judgment. The Court retained jurisdiction to enforce the permanent injunction in favor of Plaintiffs and as against Defendants. The Parties aver that "Settlement discussions were instituted because all of the Plaintiffs' relief had been obtained." See Joint Motion at p. 10. Thus, the relatively modest Settlement terms fairly reflect the fact that little to no discovery or uncertainty remains at this stage of the proceeding.

      D.    The Experience and Views of Counsel

As the Parties point out in their Joint Motion, Class

Counsel and the Office of the Attorney general are experienced in class action litigation and have been adversaries in other class action litigation.  See e.g., Burns-Vidlak v. Chandler, Civ. No. 95-00892 (D. Haw. 1999).  Counsel to both sides of the instant action present their views in the Joint Motion that the Plaintiffs have obtained the declaratory and injunctive relief sought in this case and that Settlement for Plaintiffs' attorneys fees is fair.  The Court finds that the experience and views of counsel support approval of the Settlement.

      E.    The Reaction of the Class Members to the Proposed Settlement

The Parties submit for the Court's review a Notice of Proposed Settlement to class members.  See Exh. "1".  The Notice has not yet been sent to the class members in the action.  The Court finds the Notice adequate to apprise class members of the existence and nature of the Proposed Settlement and inform class members of their rights to object to or opt-out of the Settlement at the Final Fairness Hearing.  The Court directs the Parties to distribute the Notice to class members of the instant case by July 16, 2007.  At the hearing the Parties agreed that the Notice would be included in the rent notification mailed to all tenants in public housing for the month of July, the Notice would be conspicuously posted at the public housing facilities, and the Notice would be published in the major newspapers for O`ahu, Kauai, Maui, and Hawai`i for one weekend.  The Court will

consider any objections that are filed at the Final Fairness hearing in this case.

      F.   <u>The Possibility of Collusion between the Parties</u>

There is no disparate treatment between class members under the Proposed Settlement. All class members benefit from HCDCH's corrective measures and compliance with the law. Payment of Plaintiffs' attorneys' fees does not disadvantage any class members relative to each other. Furthermore, both Parties aver that negotiation for the Settlement Agreement was reached as a result of arm's length and non-collusive negotiations between class counsel and the Office of the Attorney General. <u>See</u> Joint Motion at p. 11. The lack of preferential treatment of certain class members supports the conclusion that the named Plaintiff did not collude with the Defendants at the expense of the unnamed plaintiffs in the class. <u>See</u> <u>Hanlon</u>, 150 F.3d at 1027.

All of the factors discussed above support a finding that the Proposed Settlement Agreement is fair, reasonable, and appropriate.

<u>**CONCLUSION**</u>

For the foregoing reasons and in accordance with Rule 23(e) of the Federal Rules of Civil Procedure, the Court finds that the Proposed Settlement Agreement is fair, reasonable, and adequate. The Court:

(1) Grants preliminary approval of the settlement reached in

this case, subject to the Court's receipt of an affidavit substantiating the attorneys' fees and costs alleged in the Settlement Agreement for Class Counsel;

(2) Sets the date and time for the Final Fairness Hearing for August 27, 2007 at 10:30 a.m.. The Final Fairness Hearing may be waived by the Court if no objections to the settlement are received within the time specified;

(3) Approves the mailing and publication of the proposed Notice to class members of the Proposed Settlement by July 16, 2007; and

(4) If no written objections to the settlement are received from any class members ten (10) days before the Final Fairness Hearing date, then the Court waives the Hearing and will enter an Order giving final approval to the settlement, and enter an Order dismissing the case with prejudice and dissolving the injunction.

IT IS SO ORDERED.

DATED, HONOLULU, HAWAI`I, May 21, 2007.



_____
Alan C. Kay
Sr. United States District Judge

AMONE et al. v. AVEIRO et al., Civ. No. 05-00508 ACK-BMK, Order Granting Preliminary Approval of Settlement.

12